UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RONALD J. PALASCHAK

       Plaintiff,

     v.                          **REPORT AND RECOMMENDATION**
                                      **08-CV-1172 (GLS)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

       Defendant,

## I.    Introduction

Plaintiff Ronald J. Palaschak brings this action pursuant to the Social Security

Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying his application for Disability

Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the

Administrative Law Judge ("ALJ") was not supported by substantial evidence and

contrary to the applicable legal standards. The Commissioner argues that the decision

was supported by substantial evidence and made in accordance with the correct legal

standards.

## II.    Background

Plaintiff filed for DIB on August 12, 2004, alleging on onset date of June 1, 2002

(R. at 26).[2] This application was denied initially on December 24, 2004 (R. at 41-43).

Plaintiff alleges disability due to severe depression, anxiety, bipolar disorder, psychotic

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 7, 2009.
[2] Citations to the underlying administrative record are designated as "R."

episodes and arthritis. Plaintiff filed a timely request for a hearing on February 11, 2005 (R. at 45).

On October 4, 2005, Plaintiff appeared before the ALJ (R. at 357). The ALJ considered the case *de novo* and on March 27, 2006, issued a decision finding Plaintiff not disabled (R. at 40). On August 28, 2006, the Appeals Council remanded the case to the ALJ to "[o]btain evidence from a vocational expert" (R. at 83). A second hearing was held on November 21, 2007, and a VE testified telephonically (R. at 387, 389). On January 24, 2008, the ALJ issued a decision finding Plaintiff not disabled (R. at 25). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on September 5, 2008 (R. at 6-9). On November 3, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

## III.   Discussion

### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

---

[4] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

For the reasons that follow, it is respectfully recommended that Defendant's

Motion for Judgment on the Pleadings be GRANTED.

### B.   Analysis

#### 1.  The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not

disabled within the meaning of the Act (R. at 25). At step one, the ALJ found that

Plaintiff "did not engage in substantial gainful activity during the period from his alleged

onset date of June 1, 2002[,] through his last date of insured of December 31, 2004" (R.

at 16). The ALJ then found, at step two, that Plaintiff had the following severe

impairments: "depressive disorder, bipolar disorder and anxiety disorder." Id. At step

three, the ALJ found that Plaintiff's impairments did not either individually or in

combination meet or medically equal one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (R. at 18). The ALJ found the following for Plaintiff's

residual functional capacity ("RFC"):

> lift and carry 20 pounds occasionally and 10 pounds frequently; sit six
> hours in an eight-hour work day but would need to change his posture
> frequently, for more than momentarily, every hour; stand and walk six
> hours in an eight-hour work day but would need to change his posture
> hourly; and occasionally climb, stoop, kneel, crouch and crawl. He could
> understand and follow simple instructions and directions; perform simple
> and some complex tasks with supervision and independently; maintain
> attention and concentration for those tasks; attend to and maintain a
> schedule; learn new tasks; make appropriate decisions; and occasionally
> interact with the public and coworkers

(R. at 19). Based on the testimony of a VE, the ALJ found that Plaintiff's RFC allowed

him to perform the following positions in the national economy: small assembler, sub-

assembler of electrical parts, and night cleaner (R. at 24). Therefore, the ALJ found that

Plaintiff was not disabled within the meaning of the Act at any point through the date of last insured, December 31, 2004 (R. at 25).

## 2. Plaintiff's Claims:

### A. The ALJ Did Not Err In Analyzing Plaintiff's Treating Physicians

Plaintiff argues that the ALJ erred in i) ignoring the opinions of Dr. Cook; ii) granting the opinions of Dr. Desai "little weight;" and iii) granting the opinions of the Social Security Administration ("SSA") consultative physicians "great weight." Plaintiff's Brief, pp. 6-9.

### i. The ALJ Did Not Err in Considering Dr. Cook's Opinions

Plaintiff argues that the ALJ ignored the opinions of Dr. Cook. Plaintiff's Brief, pp. 8-9. Dr. Cook did not supply an assessment of either Plaintiff's physical or mental limitations. Thus, any medical opinions Dr. Cook offered would be found in his treatment notes. While Plaintiff argues that "the RFC opined by the [ALJ] clearly excludes the opinions of Dr. Cook," he fails to state to which opinions he is referring. Id.

According to the "treating physician's rule,"[5] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The following encompasses the ALJ's discussion of Dr. Cook: "[t]he claimant received medical treatment from Thomas J. Cook, M.D., from at least March 2002. The physician made the diagnoses of hypertension, GERD,[6] renal listhiasis (kidney stones) and arthritis and prescribed treatment with medications including Lotrel, Vicodin, Mobic, Urocit, and Nervasc. According to treatment notes, these medical conditions remained stable" (R. at 17).

Dr. Cook was Plaintiff's treating physician dating back to March 8, 2002 (R. at 269). Dr. Cook originally treated Plaintiff for both his physical and mental impairments. See (R. at 269, 165, 168, 281, 273). Beginning in March 2004, Dr. Cook believed Plaintiff's mental impairments had become too severe for him to treat (R. at 174). In

---

[6] Gastroesophageal Reflux Disease. Gerd.com, *Glossary*, http://www.gerd.com/consumer/glossary.aspx.

May of that year Dr. Cook sent Plaintiff to psychiatrist, Dr. Desai (R. at 176). Dr. Cook continued to treat Plaintiff's physical impairments. See (R. at 300, 305, 335). Dr. Cook also remained somewhat involved in Plaintiff's psychiatric treatment. For example, Dr. Desai noted that Dr. Cook had changed Plaintiff's medication from Lexapro[7] to Effexor[8] because Effexor was causing side effects (R. at 316).

Dr. Cook did not supply an assessment of Plaintiff's physical or mental limitations. The diagnoses Dr. Cook made in his treatment notes, as well as various symptoms resulting from those diagnoses, are the only medical opinions that he offered. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Plaintiff stated at both hearings that he was not arguing disability based on his physical impairments (R. at 372, 396). Despite these statements by Plaintiff, the ALJ engaged in a thorough analysis of several of Plaintiff's physical impairments, ultimately finding them not severe (R. at 17). Notably, the ALJ considered Plaintiff's arthritis, the sole physical impairment Plaintiff now alleges is disabling. Id. As for Plaintiff's mental impairments, Dr. Cook's medical opinions consisted entirely of three diagnoses: depression, anxiety, and a bipolar disorder. See (R. at 269, 287). The ALJ failed to address Dr. Cook's medical opinions explicitly. However, the ALJ found that Plaintiff had

---

[7] Trademark for escitalopram oxalate, an antidepressant. *Dorland's Illustrated Medical Dictionary*, 1047, 654 (31st ed. 2007).
[8] Trademark for venlafaxine hydrochloride, a serotonin-norepinephrine reuptake inhibitor. *Dorland's* at 602, 2074.

the following severe impairments: "depressive disorder, bipolar disorder and anxiety disorder" (R. at 16). Clearly, the ALJ did not discredit these diagnoses and in fact found them all to be severe. Thus, although the ALJ failed to state the weight he granted to Dr. Cook's diagnoses, both physical and mental, the Court finds the error harmless. See Jones v. Barnhart, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (internal citations omitted) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"); Walzer v. Chater, 1995 WL 791963, at *9 ("[T]he ALJ's failure to [discuss a report completed by Plaintiff's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."); Pease v. Astrue, 2008 WL 4371779, at *8 (N.D.N.Y. Sept. 17, 2008) (internal citations omitted) ("The ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians . . . . Therefore, the ALJ's failure to comment on the weight of evidence was harmless error, and does not provide a basis for a remand to the Commissioner.").

### ii.  The ALJ Did Not Discount Dr. Desai's Opinions Because They Were Retrospective

Plaintiff argues that the ALJ improperly discounted Dr. Desai's opinions because they were "dated after the Plaintiff's date of last insured." Plaintiff's Brief, p. 8. Plaintiff argues this was error because "Dr. Desai's opinions are actually from both before and after the date of last insured status." Id.

Plaintiff began seeing psychiatrist Dr. Desai on May 5, 2004, after a referral from Dr. Cook (R. at 191-3, 176). Plaintiff continued to regularly see Dr. Desai through the

second hearing (R. at 191-7, 233-8, 316-7, 343-52, 397). Dr. Desai supplied several

assessments of Plaintiff's mental limitations.

The ALJ found the following when assessing and granting weight to Dr. Desai's

various opinions:

> Dr. Desai's opinions, which are all dated after claimant's date last insured,
> are not consistent from one medical assessment to another. Interestingly,
> the most recent and least restrictive assessment is the only assessment
> that Dr. Desai supported with clinical findings. The other medical source
> statements contain only brief notes indicating claimant is asocial and
> isolative with impaired attention and concentration and limited interactions
> or do not include any explanation whatsoever. Therefore, the November
> 2007 assessment is given the most weight of the three. This assessment,
> however, is given very limited weight because it is not consistent with Dr.
> Desai's treatment notes or the other medical evidence of record pertaining
> to the period prior to claimant's date last insured. For example, Dr. Desai's
> assessment is reportedly based on findings of poor concentration, limited
> ability to tolerate frustration, severe depression, forgetfulness, isolation,
> poor communication, asocial personality and poor retention and recall. Dr
> Desai also noted claimant had been homebound for many years. Yet, Dr.
> Desai's treatment notes from May 2004 to December 31, 2003 reflect little
> other than worrisome affect, depressed mood and *complaints* of anxiety,
> decreased energy, limited concentration and forgetfulness and *occasional*
> bad days. All other aspects of claimant's mental status examinations were
> apparently within normal limits and medication was having some positive
> effect

(R. at 23) (internal citations omitted) (emphasis in original). Clearly, the ALJ was not

discounting Dr. Desai's opinions because he believed they were retrospective, as

Plaintiff argues. Indeed, the ALJ engaged in a thorough analysis when granting weight

to Dr. Desai's opinions. Therefore, Plaintiff's argument is without merit.

### iii. The Weight Granted to the SSA Consultative Physicians was Appropriate

Plaintiff argues that the ALJ erred in affording Dr. Mata, Noia, and Henderson

"great weight." Plaintiff's Brief, pp. 8-9.

Dr. Mata was the SSA non-examining review physician. On December 23, 2004, Dr. Mata completed both a psychiatric review technique and a mental RFC assessment (R. at 214-27, 228-30). Contrary to Plaintiff's argument, the ALJ did not afford Dr. Mata's opinions "great weight." Plaintiff's Brief, p. 8. Instead, the ALJ found the following: "Dr. Mata is not an examining source but, because she reviewed the evidence of record, reached her conclusions based on such a review and provided a rationale for her conclusions, pursuant to the above-cited regulation and Social Security Ruling 96-6p, her opinions are entitled to *some weight*" (R. at 22) (internal citations omitted) (emphasis added). Therefore, Plaintiff's argument is without merit.

As for Dr. Henderson, the SSA consultative physician, the ALJ found the following "[w]hile Dr. Henderson is a consulting examiner who only saw the claimant on one occasion, his findings and opinions are given considerable weight because he performed a thorough examination of the claimant. Furthermore, his findings, which are consistent with the overall record, support his conclusions" (R. at 21) (internal citations removed). The ALJ made similar findings in regards to Dr. Noia, the SSA consultative psychiatrist. "The findings and conclusions of Dr. Noia are also given considerable weight because he performed a thorough examination and his conclusions are consistent with the overall record including the claimant's reported activities." Id. The Court can find no error in the ALJ's analysis. See Ayres v. Apfel, 1999 WL 167708, at *9 (E.D.N.Y. Feb. 12, 1999) (citing 20 C.F.F. § 404.1527(f)) ("The Administrative Law Judge was entitled to give significant weight to the consultative physicians' opinions, which were well supported by clinical evidence."); see also SSR 96-6p, 1996 WL 374180, at *3 (S.S.A.) ("In appropriate circumstances, opinions from State agency

11

medical and psychological consultants and other program physicians and psychologists

may be entitled to greater weight than the opinions of treating or examining sources.").

## B. The ALJ's Listing 12.04 Findings are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding Plaintiff did not meet Listing 12.04.

Plaintiff's Brief, pp. 9-11. Specifically, Plaintiff argues that he meets criteria A and B of

Listing 12.04.

Listing 12.04 states, in relevant part:

Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
        a. Anhedonia or pervasive loss of interest in almost all activities; or
        b. Appetite disturbance with change in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid thinking; or
    2. Manic syndrome characterized by at least three of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractibility; or
        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h.  Hallucinations, delusions or paranoid thinking;
Or

3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
And

B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In determining whether Plaintiff met Listing 12.04, the ALJ went through a thorough analysis of whether Plaintiff met criterion B of Listing 12.04 (R. at 18-9). The ALJ found that Plaintiff had "no more than mild restriction in activities of daily living," "mild difficulties in social functioning," "moderate difficulties in maintaining concentration, persistence or pace," and "no episodes of decompensation." Id. Because the ALJ found that Plaintiff did not satisfy the requirements set forth in criterion B of Listing 12.04, the ALJ found that Plaintiff did not meet that Listing.

The ALJ's findings are supported by substantial evidence. For example, as noted by the ALJ, Dr. Mata found that Plaintiff's "mental impairments resulted in mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence and pace; and have never resulted in repeated episodes of deteriorating, each of extended duration" (R. at 18, 224). Moreover, in reaching his conclusions, the ALJ discussed how Plaintiff's daily

13

activities, relationships with others, and reported symptoms corroborated his findings (R. at 18). Therefore, the ALJ's findings are supported by substantial evidence.

### C.  The ALJ Did/Did Not Err in Regards to the VE

Plaintiff argues that i) the hypothetical given to the VE was flawed; ii) the VE could not provide statistical evidence to substantiate his findings; and iii) the ALJ erred by allowing the VE to testify by telephone; Plaintiff's Brief, pp. 11-3.

### i)  The Hypothetical Given to the VE was Supported by Substantial Evidence

Plaintiff argues that the hypotheticals given to the VE were flawed, and therefore the answers based on those hypotheticals cannot be relied upon by the ALJ. Plaintiff's Brief, pp. 11-13.

Whether a hypothetical given to the VE is appropriate depends on whether the hypothetical fully encompasses Plaintiff's physical and mental limitations. See Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir. 1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

The ALJ found the following for Plaintiff's RFC:

lift and carry 20 pounds occasionally and 10 pounds frequently; sit six hours in an eight-hour work day but would need to change his posture frequently, for more than momentarily, every hour; stand and walk six hours in an eight-hour work day but would need to change his posture hourly; and occasionally climb, stoop, kneel, crouch and crawl. He could understand and follow simple instructions and directions; perform simple and some complex tasks with supervision and independently; maintain attention and concentration for those tasks; attend to and maintain a

schedule; learn new tasks; make appropriate decisions; and occasionally
interact with the public and coworkers

(R. at 23).

The following is the second hypothetical given to the VE: "stand/walk of six . . .

out of [an] eight hour period, they would need to change their postures to a different

posture hourly and . . . sit six out of eight hours, changing their posture more than

momentarily every hour" (R. at 416). The ALJ also included the limitations from his first

hypothetical to the extent that they were not altered by his second hypothetical. Id.

Those limitations included: "[l]ift, carry 20 pounds occasionally, 10 pounds frequently.

Posturally can occasionally climb, stoop, kneel, crouch, and crawl" (R. at 413). As for

Plaintiff's mental limitations, he "can understand and follow simple instructions and

directions. Can perform simple and some complex tasks with supervision and

independently. Can attend to and maintain a schedule. Can learn new tasks. Can make

appropriate decisions and can occasionally interact with the public and co-workers" (R.

at 414).

The Court finds that the hypothetical given to the VE encompasses all the

physical and mental limitations set forth in the ALJ's RFC finding. Therefore, the

hypothetical given to the VE is supported by substantial evidence.

### ii)  The VE's Testimony was Not Flawed

Plaintiff argues that the VE's testimony was flawed because he did not provide

statistics from the dictionary of occupational titles ("DOT") and, also, based his opinions

on his on-site job analysis. Plaintiff's Brief, p. 13.

The Court finds Plaintiff's argument lacks merit. A VE is an expert and his opinions may be relied upon by the ALJ. See Pena v. Astrue, 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)) ("A 'VE's recognized expertise provides the necessary foundation for his or her testimony.'"); see also Razo v. Astrue, 2008 WL 2971670, at *5 (S.D.N.Y. Jan. 21, 2008) (citing Mendez v. Barnhart, 2007 WL 186800, at *14 (S.D.N.Y. Jan. 23, 2007)) (finding the ALJ appropriately relied on the VE's testimony to determine how positions were actually performed in the national economy, despite conflicting evidence in the DOT).

### iii)   The ALJ Erred by Allowing the VE to Testify by Telephone

Plaintiff argues that the ALJ erred in allowing the VE to testify by telephone at the second hearing. Plaintiff's Brief, p. 13. Plaintiff contends that it was error for the VE to not appear "in person, or at a minimum, by videoconferencing," and Plaintiff's counsel did so in a cogent fashion.[9] Id.  Thus, Plaintiff asserts that he had the right to cross-examine the VE, that it was inappropriate, and that taking testimony in that manner was "inappropriate."  Defendant argues that phone testimony is allowed by the HALLEX and Plaintiff's ability to cross-examine the VE was not hindered by the telephone. Defendant's Brief, pp. 20-21.

Although the ALJ did not specifically overrule Plaintiff's objection, and instead "noted" it, he went forward with the VE's phone testimony (R. at 390, 407-24). The ALJ

---

[9] I am objecting to any testimony from the vocational expert by telephone.  My client had previously requested an in-person hearing and that presumes that not only the judge and any witnesses are in person and its apparently unfair to have a witness testify by telephone where neither you nor I can observe his posture, his reaction to questions, his expression to allow weight to evaluate credibility.  It makes it next to impossible to present documents to him to look at to get immediate action to such presentations and to allow that to be a part of the record in this matter.  So I am objection [sic] to that, that portion of the testimony as it affects my ability to cross-examine this witness and to provide due process to my client (R. at 390).

offered no explanation as to why the VE testified by telephone and not in person or by video teleconference ("VTC").

The testimony of an objective and impartial vocational expert is generally the last testimonial evidence offered during a claimant's hearing before an ALJ.  See SSA History, History of SSA During the Johnson Administration 1963-1968, Operating Methods, http://www.ssa.gov/history/ssa/lbjoper5.html.  In this historical overview of the vocational expert program, the article reviewed the 1960 establishment of the "Kerner criteria", based on Kerner v. Flemming, 283 F2d 916 (2d Cir. 1960), requiring the SSA to show "what other work, if any, [a plaintiff] can still do and what employment opportunities in such work are available to him." Based on this case and a series of conferences and task force efforts, the vocational expert system evolved by 1966, and was grounded in statute by 1967.  This historical overview revealed that the purpose of having a vocational expert appear at a hearing to determine disability was rooted in the following rationale:

> Though paid for his professional services, the vocational expert [footnote omitted] is not an agent of the Social Security Administration.  He is expected to remain completely objective and impartial in expressing his opinions, whether they are favorable or unfavorable to the claimant.  Identifying with neither the Social Security Administration nor the claimant in what is legally a "non-adversary" procedure, the expert dispassionately contributes is vocational evidence toward an equitable decision.

> Since the expert's testimony is based not only on the prehearing documentation, but also on the oral testimony of the claimant and others, he is usually the last witness to testify.  *Thus he has considerable opportunity to observe the claimant.*

> *Observation may yield evaluative clues regarding appearance, responsiveness, general intelligence, communication skills, and other claimant characteristics.  Also observable are physical capacities, such as the use of limbs or prostheses, or physical endurance during the course of a sometimes lengthy*

17

*hearing.  Residual functional capacities may be deduced from the claimant's account of everyday activities; including use of public transportation.  Inferences may be drawn too, regarding the claimant's emotional capacities, motivation, and other personality factors.*

On the basis of residual functional capacities, and in consideration of age, education, vocational experience and other relevant factors described above, the vocational expert contributes to the welfare of the claimant.  Unsuspected residual capacities may be revealed, as well as occupational possibilities not previously considered.  *Ways of actualizing vocational potentials and realizing job prospects may be presented as part of the testimony.  The availability of appropriate community resources may be mentioned.  As a consequence of the vocational expert's concern for the claimant, the latter sometimes leaves the hearing newly motivated.*  (emphasis supplied)

Thus, without personal observation of the claimant, the vocational expert

arguably cannot perform his or her job as the job was historically envisioned.

Moreover, in its Comments in response to the Social Security Administration

Notice of Proposed Rulemaking [Docket No. SSA 2007-0044], 20 CFR Parts 404, 405

and 416 (Federal Register/Vol. 72, No. 208, Oct. 29, 2007), the Association of

Administrative Law Judges "strongly" opposed telephonic hearings when they

commented:

We have strongly opposed the introduction of telephone hearings (proposed rules 20CFR §§404.936(c), 416.1436 (c)).  A telephone hearing does not provide for the due process required for a constitutional hearing, the hearing required by the Social Security Act, or the procedure provided for by the Administrative Procedure Act.  A telephone hearing adversely affects the ability of the administrative law judge to ascertain the identity of the participants and to determine the credibility of either the claimant or the witnesses because their demeanor cannot be observed by the judge.  A telephone hearing adversely affects the opportunity of the claimant to observe the judge and what is actually going on in the hearing, including undermining the claimant's ability to effectively cross-examine the testimony of expert witnesses.  Telephone testimony conveys the impression that the hearing is perfunctory and not an important stage in the Social Security disability process.  This type of hearing is contrary to the long standing culture and tradition of the American legal system in general and Social Security disability process in particular.  The long standing feature that has distinguished the Social Security disability hearing from other parts of the

process is that this is the time in the process where the claimant is given an opportunity to appear in person before a judge and present oral and written evidence which supports his/her claim.  A telephone hearing is disrespectful to the claimant and detaches them from the adjudicatory process in such a way that it negatively impacts upon the claim and infringes upon their right to a constitutional due process hearing.

www.aalj.org/pdf/08d003.pdf.

Moreover, the Social Security Regulations make no reference to telephonic testimony.  Rather, the regulations state only that "[w]itnesses may appear at a hearing in person or, when the conditions in § 416.1436(c) exist, video teleconferencing." 20 C.F.R. § 416.1450(e). 20 C.F.R. § 415.1436(c) states, in relevant part:

In setting the time and place of the hearing, the administrative law judge determines whether your appearance or that of any other individual who is to appear at the hearing will be made in person or by video teleconferencing. The administrative law judge will direct that the appearance of an individual be conducted by video teleconferencing if video teleconferencing technology is available to conduct the appearance, use of video teleconferencing to conduct the appearance would be more efficient than conducting the appearance in person, and the administrative law judge does not determine that there is a circumstance in the particular case preventing use of video teleconferencing to conduct the appearance.

Thus, the regulations appear to prefer in-person testimony and allow for testimony via video teleconferencing only in certain circumstances. § 415.1436(c). Clearly, there has been no exception created for testimony via telephone in the regulations. When deciding whether to allow VTC, the Federal Register noted the following: "[t]he purpose of the rules is to provide us with greater flexibility in scheduling and holding hearings, improve hearing process efficiency, and extend another service delivery option to individuals requesting a hearing." Video Teleconferencing Appearances Before Administrative Law Judges of the Social Security Administration, 68 Fed. Reg. 69,003, 69,003 (Dec. 11, 2003). VTC was the "service delivery option" to

19

which the Federal Register was referring. Id. The Federal Register makes no mention of a telephone option.

Parenthetically, courts have been willing to find exceptions to allow for the telephonic testimony of a claimant, but only if the claimant is physically unable to attend the hearing. See Vicari v. Astrue, 05-cv-4967, 2009 WL 331242, at *5 (E.D.N.Y. Feb. 10, 2009) ("[I]f [Plaintiff's] current condition prevents his physical appearance at any hearing, the Commissioner may elect . . . to arrange for plaintiff's appearance by video teleconferencing. Failing that, the ALJ is directed to take [Plaintiff's] testimony telephonically and accord it the same weight it would have been accorded if given in person."); Davidson v. Astrue, No. 08-cv-209, 2008 WL 4865584, at *10 (W.D.Wis. Nov. 6, 2008) (the Court upheld the ALJ's decision denying Plaintiff's request to appear telephonically, in part, because the evidence showed Plaintiff "was able to attend medical appointments when necessary"). However, here, the issue concerns a VE, not a claimant. Moreover, the ALJ offered no explanation as to why the VE was unable to physically appear at the hearing.

Defendant attempts to rely on the Social Security Administration Hearings, Appeals and Litigation Law Manual ("HALLEX"), I-2-5-30. Medical or Vocational Expert Opinion — General, ("Claims Manual"), which states that "[t]he method for obtaining ME or VE opinion is through in-person testimony or testimony taken via telephone or video teleconference at a hearing." HALLEX I-2-5-30, 1994 WL 637367 (S.S.A.) (emphasis supplied). Thus, the Claims Manual specifically allows testimony via phone. Id. However, portions of the Claims Manual have been found not binding on the Court. See, e.g., Martinez v. Astrue, 07cv699, 2009 WL 840661, at *2 n.1 (D. Conn. Mar. 30,

20

2009) ("Certain manuals, including <u>HALLEX</u>, are not regulations and therefore are not

binding on the Social Security Administration."); <u>see also</u> <u>Schweiker v. Hansen</u>, 450

U.S. 785, 790 (1981) ("But the Claims Manual is not a regulation. It has no legal force,

and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by

thousands of SSA employees . . ."). The Court also notes that the Claims Manual

provision authorizing telephonic conferencing offers no reasoning or comment

whatsoever on its use.  While the Claims Manual I-2-5-30 offers extensive comment on

video telephone conferencing and the use of interrogatories, it offers no rational or

authority for telephone use or for that matter, any comment whatsoever.  Moreover,

HALLEX 1-2-5-32 addresses directly with reasoning and procedures for video

conferencing and the use of the telephone with ME's without mentioning any such

procedures involving VE's.  Thus, given the apparent conflict between the HALLEX and

the regulations, the Court finds that the regulations should control and further finds that

it was error to allow telephonic testimony of the VE over the objections of the Plaintiff.

The Court observes that in promulgating the HALLEX Claims Manual with a reference

to the use of the telephone, to permit witness testimony in conflict with its own

regulations, the Social Security Administration has engaged in an administrative sleight-

of-hand.  The Court further observes that the Defendant himself relies on the precedent

that "where the rights of individuals are affected, an agency must follow its own

procedures, even where the internal procedures are more rigorous than would

otherwise be required." Citing <u>Newton v. Apfel</u>, 209 F.3d 448, 459 (5th Cir.

2000)(Quoting <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 (5th Cir. 1981).  Although the

Defendant cited to this authority in reliance on the Claims Manual to support his

position, this principle more appropriately requires adherence to the methods authorized in the Social Security Regulations.

While the Court is loathe to allow the Commissioner to sidestep the regulations in this fashion, it does not recommend remand on the basis of this error because it appears to be harmless in this case on these facts.

For example, Plaintiff's counsel, while having adequately and competently placed the objection on the record, was able to extensively cross-examine the VE and was not restricted in his questioning by the ALJ, although I do note that the VE had time constraints to which the ALJ and counsel appeared to be sensitive.  Indeed, based on Plaintiff counsel's own hypothetical construct, he obtained some key concessions by the VE during his examination, the facts of which although not necessarily supported by the facts of the case, but were nevertheless the product of careful cross-examination. Thus, the Court recommends affirming the ALJ decision on the basis that the Plaintiff cannot demonstrate that the error was more than harmless.   In NLRB v. American Geri-Care, Inc., 697 F.2d 56, 64 (2d Cir. 1982) (citing NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969); Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States, 377 U.S. 235, 248 (1964), the Second Circuit held that "reversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather it requires reversal and remand *only* where there is a significant chance that but for the error, the agency might have reached a different result." (emphasis in original).

Although the Court has found the use of the telephone in this particular case to be harmless error, it is troubled by its use over the specific objection by the Plaintiff.

Accordingly, the Court recommends that the Commissioner revisit this procedure and reconsider his approach to the use of telephone testimony, especially in the face of an objection by a claimant.

## IV.   Conclusion

After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York

DATED:      November 13, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);  *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);  *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED:      November 13, 2009

24